UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVA STONE,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 2:18-cv-02862 CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1980, applied on July 9, 2012, for SSI, alleging disability beginning January 1, 1989. Administrative Transcript ("AT") 106. Plaintiff alleged she was unable to work due to narcolepsy. AT 106. Following a hearing in April 2014, an ALJ issued a decision dated October 7, 2014, finding plaintiff not disabled. AT 40, 153-70. The Appeals Council reviewed

the decision and remanded the case, stating in part:

> The [ALJ] found that the claimant's narcolepsy was not medically
> determined and was thus not a severe impairment. However, the
> claimant has a long established history of narcolepsy. The claimant's
> narcolepsy was previously found to be disabling as a child and later
> under the adult standard from 1999 to 2006. She has managed the
> condition with medication. As recently as June 2014, the claimant's
> neurologist, Robin Soffer, M.D., diagnosed her with excessive
> daytime sleepiness and noted possible obstructive sleep apnea.
> Further, the claimant testified at the hearing that she often falls asleep
> and it prevents her from cooking, driving, using mass transit and
> social engagement. The record establishes that the claimant's
> narcolepsy causes more than a minimal effect on her ability to
> perform basic work activities. Interestingly, the [ALJ] considered
> listing 11.03 regarding the claimant's narcolepsy despite finding a
> non-medically determinable impairment at step two which is
> inconsistent. Considering the *de minimis* standard at step two,
> further evaluation is necessary.

AT 172-173 (record citations omitted). The Appeals Council issued specific instructions for the
ALJ on remand. AT 173.

After a second hearing on remand in July 2017, the ALJ determined that plaintiff was not
disabled[1] in a decision dated December 15, 2017. AT 20-31. The ALJ made the following

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to
disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in
part, as an "inability to engage in any substantial gainful activity" due to "a medically
determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful
> activity? If so, the claimant is found not disabled. If not, proceed to
> step two.

> Step two: Does the claimant have a "severe" impairment? If
> so, proceed to step three. If not, then a finding of not disabled is
> appropriate.

> Step three: Does the claimant's impairment or combination
> of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App.1? If so, the claimant is automatically determined
> disabled. If not, proceed to step four.

> Step four: Is the claimant capable of performing his past
> work? If so, the claimant is not disabled. If not, proceed to step five.

findings (citations to 20 C.F.R. omitted):

> 1.  The claimant has not engaged in substantial gainful activity since July 9, 2012, the application date.
>
> 2.  The claimant has the following severe impairments: narcolepsy[2], sleep apnea, obesity, and depressive disorder.
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except occasionally climb ladders/ropes/scaffolds; avoid concentrated use of hazardous machinery; avoid concentrated exposure to unprotected heights; capable of simple routine and repetitive tasks; and capable of low stress work with occasional decision making and occasional changes in the work setting.
>
> 5.  The claimant has no past relevant work.
>
> 6.  The claimant was born on XX/XX/1980, which is defined as a younger individual age 18-49 on the date the application was filed.
>
> 7.  The claimant has a limited education and is able to communicate in English.
>
> 8.  Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.
>
> 9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10.  The claimant has not been under a disability, as defined in the Social Security Act, since July 9, 2012, the date the application was

---

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

---

[2] Narcolepsy is "a sleep disorder that causes extreme sleepiness and uncontrollable sleep attacks, making a person fall asleep at inappropriate times during the day." Harvard Medical Dictionary of Health Terms, https://www.health.harvard.edu/medical-dictionary-of-health-terms/j-through-p#N-terms (last visited March 20, 2020).

1    filed.

2  AT 20-31.

3  ISSUES PRESENTED

4       Plaintiff argues that the ALJ committed the following errors in finding plaintiff not

5  disabled:  (1) the ALJ improperly discounted plaintiff's credibility as to the intensity, persistence,

6  and limiting effects of her symptoms; (2) the ALJ erred in weighing the medical opinion

7  evidence; (3) the ALJ erred in determining that plaintiff did not equal Listing 11.02; (4) the RFC

8  was not based on substantial evidence and fails to include all limitations.

9  LEGAL STANDARDS

10      The court reviews the Commissioner's decision to determine whether (1) it is based on

11  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

12  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

13  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

14  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

15  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

16  Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

17  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

18  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

19  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

20  rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

21      The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

22  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

23  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

24  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

25  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

26  administrative findings, or if there is conflicting evidence supporting a finding of either disability

27  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

28  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A.  Credibility

Plaintiff asserts that the ALJ erred in discounting her credibility as to the intensity,

persistence, and limiting effects of her symptoms.

The ALJ summarized plaintiff's testimony as follows:

> The claimant testified that due to her narcolepsy, she has not been
> hired due to falling asleep during her job interviews or orientations.
> She stated that her narcolepsy has affected her since she was
> diagnosed at the age of 10.  She testified that once she was placed on
> medication her symptoms were better but she continued to fall asleep
> but just not as much.  She stated that she has not been on medication
> for a number of years due to funds; however, she is currently on
> Medicare.  Despite being on Medicare, she still has not received any
> medication due to her primary care physician requesting a recent
> sleep study to confirm her diagnosis before prescribing any
> medication.
>
> The claimant testified that her narcolepsy is the primary reason she
> is unable to work; however, she did state that she has problems
> standing and that one of her legs gives her problems.  She also said
> she has difficulty with shortness of breath.  In addition to the physical
> condition, she testified that her narcolepsy has caused depression due
> to her inability to live life as a normal 36 year old and the feeling that
> she needs to have a babysitter.  She said she is unable to cook, drive,
> or take public transportation due to falling asleep.
>
> The claimant testified that she currently lives with her sister.  She
> says she has a 5-month-old son.  She testified that during the summer
> months there are family members around to help her watch her son;
> however, during the school year she is home alone during the day
> with her son.  She said that she is able to care for her son; however,
> she has to take precautions so when she falls asleep her son would
> not get hurt.  She testified that in a typical day, she falls asleep
> approximately every 20 minutes.
>
> The claimant testified that she could stand and walk a short period
> because her leg gives her problems.  She said she is able to go to the
> grocery store with her sister, who helps her with her activities of daily
> living, but she has to lean on the walls and only shop for short
> periods.  She said she is able to lift her son who is approximately 20
> pounds and she is able to carry groceries that weigh approximately 5
> pounds.

AT 26; see AT 64-102 (July 31, 2017 hearing testimony).

As to credibility, the ALJ wrote:

> As for the claimant's statements about the intensity, persistence, and

limiting effects of her symptoms, they are inconsistent because as observed during the hearing, despite the claimant testifying that she falls asleep every 20 minutes, she was able to attend the entire hearing, which took longer than 20 minutes, and did not fall asleep. Additionally, she is capable of taking care of an infant by herself albeit there are a lot of family around. Furthermore, she has not really sought medical treatment since her SSI ceased in 2006 despite her testifying that she had improvement with medication but did not seek to refill the medication.

AT 27.

The ALJ then reviewed the medical evidence of physical impairment, noting that plaintiff "has a history of narcolepsy since the age of 9 or 10 and was found to be disabled by the [SSA]; however, by June 1, 2006, the claimant was no longer considered disabled[]" as her narcolepsy responded to medication. AT 27 (record citations omitted). Prior to 2012, when plaintiff applied for disability benefits in the instant case, there was "a significant gap in the treatment record"; however, plaintiff underwent a December 2012 neurological examination and sought treatment in May 2013, when she was diagnosed with narcolepsy by treating physician Dr. Crumpler. AT 27 (record citations omitted).

The ALJ summarized plaintiff's medical history as to physical impairments in 2013 and 2014, noting examining physician Dr. Cohen's August 2013 diagnosis of "severe narcolepsy with multiple daily episodes of sleep and likely cataplexy," but also noting plaintiff's reported daily activities, including cleaning, grocery shopping, and taking walks. AT 27 (record citations omitted). The ALJ summarized a June 2014 neurological examination where plaintiff showed "evidence of sleepiness after 30 minutes, . . . falling into a slight sleep, and 3 or 4 occasions where she closed her eyes," and was diagnosed with "excessive daytime sleepiness not successfully treated." AT 28 (record citations omitted). The ALJ found "a significant gap in the treatment record from June 2014 through 2017," though plaintiff was diagnosed with narcolepsy and other conditions in June 2017. AT 28 (record citations omitted).

The ALJ also summarized the relevant medical opinions, issued after plaintiff's application date. AT 28-30. The ALJ assigned various weights to these opinions, but did not relate them back to plaintiff's testimony or explain how the credited opinions undercut plaintiff's statements about her symptoms. AT 28-30.

After weighing the medical opinions, the ALJ stated: "[C]onsidering the claimant's medical records as a whole, her testimony concerning her alleged functional limitations, and the opinion evidence, <u>I conclude the claimant's subjective complaints and alleged limitations are not entirely consistent with the medical evidence of record</u>. Accordingly, I find that the claimant retains the capacity to perform less than the full range of light, as described in the residual functional capacity assessment above." AT 30 (emphasis added).

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. <u>See</u>, <u>e.g.</u>, <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. <u>See</u> <u>id.</u> at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996); <u>see generally</u> SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. <u>Light v. Social Security Administration</u>, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. <u>See</u> <u>Flaten v. Secretary of HHS</u>, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, <u>see</u> <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1458 (9th Cir.

1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015), the Ninth Circuit held that an ALJ's failure "to identify the testimony she found not credible" and "link that testimony to particular parts of the record supporting her non-credibility determination" was legal error. See also Treichler v. Comm'r of Soc. Sec., 775 F.3d 1090, 1102-1103 (9th Cir. 2014) (ALJ's failure to "specifically identify the testimony" he found not credible was error; boilerplate statement that symptoms were not credible to the extent they were inconsistent with the RFC was insufficient); Morsea v. Berryhill, 725 Fed. Appx. 463, 465 (9th Cir. Feb. 12, 2018) (unpublished) (ALJ "failed to identify the testimony from the claimant found not credible and explain what evidence undermined his testimony. Although the ALJ summarized claimant's testimony and also summarized the medical evidence in the record, the findings were general in nature, which is insufficient for an adverse credibility determination."), citing Treichler, 775 F.3d at 1102.

Here, the ALJ concluded that plaintiff's subjective statements about her symptoms were "not entirely consistent with the medical evidence of record." AT 30. But "[a]n ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient[.]" Treichler, 775 F.3d at 1103 (internal quotations and citation omitted). "The ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints." Id., citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotations omitted). Thus, the ALJ's general references to the medical record and opinion evidence, at least some of which could be read to support plaintiff's testimony, are not legally sufficient reasons to discount her credibility.

The ALJ did supply three specific reasons: First, plaintiff's statements were inconsistent with the ALJ's observation that, despite her testimony that she falls asleep every 20 minutes, plaintiff did not fall asleep during the hearing, which "took longer than 20 minutes." AT 27.

Under Ninth Circuit law, an ALJ may rely, in part, on his or her own observations in assessing a claimant's credibility.  See Quang Van Han, 992 F.2d at 1458.  While the Ninth Circuit has discouraged reliance on a claimant's demeanor at testimony as support for an ALJ's conclusions, Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984), if there is other support for an ALJ's decision, then "[t]he inclusion of the ALJ's personal observations does not render the decision improper."  Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999); Drouin v. Sullivan, 966 F.2d 1255, 1259 (9th Cir. 1992) (affirming negative credibility finding where "the ALJ's personal observation was only one factor taken into consideration"); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (finding inclusion of ALJ's personal observations not improper where ALJ also considered claimant's testimony, doctors' opinions, objective medical evidence, and demeanor).

Here, the ALJ's mere observation that plaintiff did not fall asleep during the July 2017 hearing does not meaningfully address plaintiff's testimony that her narcolepsy symptoms interfered with her ability to find work and perform daily activities.  See AT 68-70 (testimony that plaintiff fell asleep during job interviews and a job orientation session); AT 74 (testimony that plaintiff had to put pillows around herself while sitting and holding her baby "because I know I'm going to fall asleep" and let go of the baby); AT 77-78 (testimony that plaintiff fell asleep in the middle of conversations); AT 81 (testimony that plaintiff had fallen asleep while cooking and while taking a bath); AT 82 (testimony that plaintiff had fallen asleep on public transit and no longer took public transit, drove, or ran errands by herself due to symptoms).

The ALJ's second stated reason for discounting plaintiff's credibility was that "she is capable of taking care of an infant by herself albeit there are a lot of family around."  AT 26. This, too, is weak evidence for finding plaintiff's testimony not credible.  Plaintiff testified in July 2017 that she had a five-month-old baby and that her sister and high school-aged relatives were "always around [to help] because it's summer break."  AT 73-74.  Plaintiff acknowledged that when they went back to school and work, she would have to take care of the baby alone, which was "really hard" because she could fall asleep while holding him, and this scared her.  AT 74. At most, therefore, plaintiff had proven capable of taking care of a newborn for a few months without significant family support, and feared being alone with her son due to her tendency to fall

asleep without warning.  It is not clear to what extent this undercuts her other testimony.

The ALJ's third stated reason for discounting plaintiff's credibility was that "she had not really sought medical treatment since her SSI ceased in 2006 despite her testifying that she had improvement with medication but did not seek to refill the medication." AT 26-37.  Certainly a claimant's "unexplained or inadequately explained failure to seek treatment" is a valid consideration in assessing credibility.  Smolen, 80 F.3d at 1284.  Here, plaintiff testified that she stopped taking medication for narcolepsy in 2006, when her Social Security benefits were discontinued and she didn't have insurance, and that her current doctor was waiting for a sleep study to confirm her diagnosis before prescribing medication for narcolepsy.  AT 87-90.  While this was a proper consideration for the ALJ, without more support from the medical record or other factors as discussed above, the ALJ's stated reasons fall short of "clear and convincing" evidence to discount plaintiff's credibility.

In Treichler, the Ninth Circuit concluded that the ALJ's failure to specify which parts of plaintiff's testimony were not credible, or to supply clear and convincing reasons for discounting it, was not harmless error.

> Because the ALJ set out his RFC and summarized the evidence supporting his determination, the government argues that we can reasonably infer that the ALJ rejected Treichler's testimony to the extent it conflicted with that medical evidence. But we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. [Citation omitted.] Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence. [Citation omitted.] No such reasoning is present here.

775 F.3d at 1103; see also Brown-Hunter, 806 F.3d at 494 (where ALJ "never identified which testimony she found not credible, and never explained which evidence contradicted that testimony," decision fails to meet ALJ's responsibility to provide reasons for her adverse determination); Powers v. Colvin, No. 1:15-cv-00077 EPG (E.D. Cal., Order dated June 21, 2016) (reversing and remanding for reassessment of claimant's credibility where ALJ failed to specify clear and convincing reasons to discount it).

\\\\

Based on the foregoing, the undersigned concludes that plaintiff is entitled to summary judgment on this claim.[3]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler, 775 F.3d at1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether plaintiff was disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant

_____

[3] This decision does not reach the remaining claims.

11

period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

Thus, the undersigned will order that this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

For the reasons stated herein, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 12) is granted;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 17) is denied;

3.  This matter is remanded for further proceedings consistent with this order.

Dated:  March 23, 2020

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/stone2862.ssi.ckd